Boonstra, J.
*201 Defendant appeals by right his convictions, following a jury trial, of unlawful *569 imprisonment, MCL 750.349b, assault with a dangerous weapon, MCL 750.82, and domestic violence, MCL 750.81(2), as a lesser included offense of aggravated domestic violence, MCL 750.81a(2). Defendant was acquitted of an additional charge of assault with a dangerous weapon and a charge of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 7 to 15 years for the unlawful-imprisonment conviction, 2 to 4 years for the conviction of assault with a dangerous weapon, and 93 days for the domestic-violence conviction. We affirm.
I. PERTINENT FACTS AND PROCEDURAL HISTORY
Defendant's convictions relate to the extended confinement and assault of his girlfriend, MH, in his *202 home. During the period of confinement, defendant choked and kicked MH, attempted to force her to drink alcohol, threatened to rape and kill her, hit her with a handgun and liquor bottle, and held the handgun to her face and chest, and put the handgun in her mouth. MH testified that defendant was armed with both a handgun and a sawed-off shotgun during the incident. She further testified that defendant forced her to unload and reload the magazine of the handgun several times. At some point, defendant tripped while taking off his pants and underwear, and MH was able to grab the handgun and escape to a neighbor's house. Eaton County Sheriff's Deputies arrested defendant and recovered a loaded handgun but could not locate a shotgun.
At trial, a forensic scientist testified that DNA taken from saliva found on the handgun contained a mix of donors and could not be conclusively matched. However, DNA taken from blood on a tank top and from blood on a door in defendant's home matched that of MH, and DNA taken from blood on a pillowcase matched that of defendant. MH testified that at times during the incident, defendant spoke in Arabic and made statements related to the Islamic religion. Defendant argued that MH was exaggerating; he described the incident as a "brawl" between defendant and MH that had resulted in injuries to both parties. Outside the view of the jury, defense counsel had MH load the magazine of the handgun that had been found in defendant's home. MH first put the magazine in backwards but eventually succeeded in loading the gun. The trial court instructed the jury that MH had demonstrated that she had the physical strength to load the magazine of the handgun.
The jury convicted defendant as described. At sentencing, the trial court scored Offense Variables (OVs)
*203 4 (psychological injury to a victim) and 7 (aggravated physical abuse) at 10 and 50 points respectively. This appeal followed.
II. ADMISSION OF DNA EVIDENCE
Defendant argues on appeal that the trial court improperly admitted DNA evidence because the prosecution failed to present the required statistical analysis. We disagree. Defendant did not object to the admission of this evidence at trial; we therefore review defendant's challenge to its admission for plain error affecting substantial rights. People v. Carines , 460 Mich. 750, 763, 597 N.W.2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." Id . (quotation marks, citation, and alteration omitted).
In People v. Coy , 243 Mich. App. 283, 294, 620 N.W.2d 888 (2000), this Court *570 concluded that evidence of a potential match between a subject's DNA sample and DNA found on evidence was "inadmissible absent some accompanying interpretive evidence regarding the likelihood of the potential match." That is, "some qualitative or quantitative interpretation must accompany evidence of [a] potential [DNA] match." Id . at 302, 620 N.W.2d 888. The Coy Court reasoned that the scientific evidence of a possible DNA match between a defendant's DNA and DNA found on evidence would not assist the jury, as MRE 702 generally requires, without "some analytic or interpretive evidence concerning the likelihood or significance of a DNA profile match...." Id . at 301, 620 N.W.2d 888.[1] Alternatively, *204 the Court held that evidence of a potential DNA match had "minimal probative value absent accompanying interpretive statistical analysis evidence," id. at 302, 620 N.W.2d 888, and should be excluded in accordance with MRE 403 when weighed against the danger of unfair prejudice, which would result if the jury were to give the DNA evidence undue weight. Id . at 303, 620 N.W.2d 888.[2]
In this case, a forensic scientist testified that the DNA profiles on the tank top, and the bedroom door matched MH's DNA profile and excluded defendant as the donor. The forensic scientist further testified that the DNA profile on a pillowcase matched defendant's DNA and excluded MH as a donor. The forensic scientist was not asked at trial to provide any empirical data to define the statistical parameters of a DNA "match." However, her report was admitted into evidence, and it contained the testing methodology used, as well as her conclusions and interpretations of the data. Following each conclusion, and for each item indicating a match with the DNA of either defendant or MH, the report contained language indicating in some fashion that "[i]n the absence of identical twins or close relatives, it can be concluded to a reasonable degree of scientific certainty that the DNA profile of the major donor to item [number and description of item tested] and the DNA from [number and description corresponding to either defendant or MH] is from the same individual."
We conclude that the forensic scientist's report constitutes "some analytic or interpretive evidence concerning *205 the likelihood or significance of a DNA profile match ...." Id. at 301, 620 N.W.2d 888. We are satisfied that there was no plain error in the admission of this evidence. See Carines , 460 Mich. at 763, 597 N.W.2d 130.
Further, even if the evidence was admitted in error, the admission did not affect defendant's substantial rights. MH described an episode lasting 3 ½ to 4 during which defendant confined her to his house with a handgun and a sawed off shotgun while assaulting her with his hands and feet, a liquor bottle, and the handgun. She told a doctor that she had been struck in the head by a firearm and had been hit on other parts of her body, and she had injuries consistent with her description of the incident. An officer photographed MH's injuries. The same officer photographed defendant, who had a bruise on his arm and scratches on his neck, left *571 elbow, and right wrist. Officers searched defendant's home and found a handgun, which MH identified, as well as an empty liquor bottle, a tank top and a pillowcase with some blood on them, blood on the door, pictures of MH's children, and MH's phone, purse, and car keys.
The evidence against defendant was therefore substantial, even apart from the DNA evidence. The DNA evidence merely established that MH's blood was found on items recovered from the bedroom and it therefore served as some corroboration of her testimony. However, the evidence also supported defendant's theory of the case-that there was a "brawl" that resulted in injuries to both parties. And the fact that DNA from saliva on the handgun barrel of the handgun was inconclusive was arguably supported defendant's claim that the handgun was not involved in the incident. For all of these reasons, defendant has not established that admission of the *206 DNA evidence, even if erroneous, affected his substantial rights and requires reversal. See Carines , 460 Mich. at 763, 597 N.W.2d 130.
III. INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant also argues that his trial counsel provided ineffective assistance in several ways. We disagree. Because defendant did not move the trial court for a new trial or an evidentiary hearing regarding his counsel's effectiveness, his claims are unpreserved and our review is limited to errors apparent on the record. People v. Unger , 278 Mich. App. 210, 253, 749 N.W.2d 272 (2008). A claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. Id . at 242, 749 N.W.2d 272. We review the trial court's factual findings for clear error, but we review de novo the constitutional question of whether an attorney's ineffective assistance deprived a defendant of his or her right to counsel. Id .
A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. U.S. Const., Am. VI ; Const. 1963, art. 1, § 20. This "right to counsel encompasses the right to the 'effective' assistance of counsel." People v. Cline , 276 Mich. App. 634, 637, 741 N.W.2d 563 (2007). In order to demonstrate ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." People v. Taylor , 275 Mich. App. 177, 186, 737 N.W.2d 790 (2007) (2007) (quotation marks and citation omitted). Counsel's performance was deficient if "it fell below an objective standard of professional reasonableness." People v. Jordan , 275 Mich. App. 659, 667, 739 N.W.2d 706 (2007). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of *207 proving otherwise." People v. Rodgers , 248 Mich. App. 702, 714, 645 N.W.2d 294 (2001). Deficient performance prejudices the defense if "it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different." Jordan , 275 Mich. App. at 667, 739 N.W.2d 706.
Defendant argues that his trial counsel provided ineffective assistance by failing to object to admission of the DNA evidence. Defense counsel's decisions are presumed to be sound trial strategy, Taylor , 275 Mich. App. at 186, 737 N.W.2d 790, and we will not substitute our judgment for the judgment of trial counsel with the benefit of hindsight, People v. Matuszak , 263 Mich. App. 42, 58, 687 N.W.2d 342 (2004).
In this case, it is likely that defendant's trial counsel did not think it necessary to dispel the notion that his or MH's DNA was found on the items in defendant's *572 home. Defendant did not deny that an altercation with MH had occurred, and he conceded that she (as well as he) had sustained injuries. The presence of their respective DNA on items found in the home would therefore be unsurprising, and challenging the DNA would seem to be of questionable purpose. Instead, defense counsel argued that defendant did not hold the victim captive, did not assault her with a firearm or liquor bottle, and was consequently been overcharged. Further, defendant was able to argue from the DNA evidence that the DNA testing on saliva found on the barrel of the handgun was inconclusive, supporting his defense. Therefore, it may well have been a strategic decision for counsel not to challenge the admission of the DNA evidence. We conclude that counsel's actions were within an objective standard of professional reasonableness. See Jordan , 275 Mich. App. at 667, 739 N.W.2d 706. Further, admission of the DNA evidence did not prejudice *208 defendant because it established that both MH and defendant were injured in the home, which was consistent with defendant's "brawl" theory. Accordingly, even if defense counsel had objected to the admission of the DNA evidence and successfully argued for its exclusion, there is no reasonable probability that the result of the trial would have been different. See id .
Defendant further argues that his trial counsel provided ineffective assistance when he elicited testimony from MH about defendant's possession of an illegal sawed-off shotgun. However, MH had already testified during direct examination that defendant was holding a handgun and a shotgun when he entered her room and told her that she could not leave. MH testified that she was familiar with the shotgun because defendant had previously sent her a text message, to which he had attached a picture, indicating that he was going to shoot himself. The picture was admitted into evidence and showed defendant holding the shotgun to his chin. MH was asked during direct examination to describe the shotgun, and she recalled that it had been altered by being sawed off and painted with markings and glow-in-the-dark paint. She also stated that defendant had displayed the shotgun during one of their romantic encounters a couple of weeks before the incident and that she had taken a video of that encounter with her phone. The video was played for the jury.
Nonetheless, defense counsel did elicit that defendant's possession of the shotgun was "illegal" and that defendant had told her that possessing it was illegal. This elicitation may well have been strategic. Counsel sought to show that MH was familiar with a unique shotgun and that she knew it had been in the house. Defense counsel argued that the shotgun was not in *209 the home at the time of the assault and that MH had reported that it was there because she had previously seen the shotgun in the home. Establishing that the shotgun was illegal may have supported defendant's theory that MH wanted to get defendant in as much legal trouble as possible by fabricating a story involving an illegal weapon. And defense counsel repeatedly emphasized that the shotgun was not found in the house. This strategy may have been partially successful, inasmuch as the jury acquitted defendant not guilty of a second count of assault with a dangerous weapon (handgun or shotgun) and of one count of felony-firearm, which suggests that the jury did not believe beyond a reasonable doubt that defendant possessed the shotgun at the time of the incident. Further, because the video showing defendant with the shotgun had already been played, defense counsel may have simply tried to "get ahead" of the issue whether defendant's possession of such a weapon was illegal, rather than leaving the jury to *573 speculate in ways that may have prejudiced his client. A common defense tactic is to acknowledge incriminating evidence that is strongly supported while denying other elements of the crime. People v. Wise , 134 Mich. App. 82, 97-99, 351 N.W.2d 255 (1984). We conclude that defendant has not demonstrated that his trial counsel's elicitation of testimony regarding the shotgun fell below an objective standard of professional reasonableness or that defendant was prejudiced by the questions posed. Jordan , 275 Mich. App. at 667, 739 N.W.2d 706.
Next, defendant argues that his trial counsel was ineffective when he failed to object to the prosecution's questions concerning his religious beliefs. We disagree. MH testified that during the incident defendant said Islamic prayers and "Muslim things" in Arabic; she also stated that she "hated the fact that he felt he was *210 a bad person" and "the fact that [Muslims had] made him this way." Defendant argues that this testimony was irrelevant and prejudicial.
"Generally, all relevant evidence is admissible at trial." People v. Aldrich , 246 Mich. App. 101, 114, 631 N.W.2d 67 (2001) ; see also MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Under this "broad definition," evidence that is useful in shedding light on any material point is admissible. Aldrich , 246 Mich. App. at 114, 631 N.W.2d 67. "The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." People v. Yost , 278 Mich. App. 341, 403, 749 N.W.2d 753 (2008) (quotation marks and citation omitted).
Much of the testimony regarding defendant's religion was relevant to demonstrate his state of mind as observed by MH during the time that he was alleged to have unlawfully confined her. MH testified that defendant had become more emotional and upset as they spoke about personal matters. The prosecution's theory of the case was that defendant committed the crimes because he had become upset at recent losses in his life, and MH's testimony reflected defendant's emotional turmoil. MH also testified that she was afraid that defendant's mental state was worsening and that she was in danger of being more severely hurt or killed if she did not attempt to flee.
The testimony regarding religion was also not unfairly prejudicial. "[Relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403 ; see also Aldrich , 246 Mich. App. at 114, 631 N.W.2d 67. "All relevant evidence is prejudicial;
*211 it is only unfairly prejudicial evidence that should be excluded." People v. McGhee , 268 Mich. App. 600, 613-614, 709 N.W.2d 595 (2005). "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." People v. Gipson , 287 Mich. App. 261, 263, 787 N.W.2d 126. (2010) (quotation marks and citation omitted). Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, like the "jury's bias, sympathy, anger, or shock." McGhee , 268 Mich. App. at 614, 709 N.W.2d 595.
Defendant argues that the jury could have been inflamed by references to the Islamic religion. However, evidence that defendant engaged in prayer and religious practices and was severely emotionally distressed *574 during the commission of the crime was unlikely to inflame the jury to the extent that it could not evaluate the case based on the evidence presented. See McGhee , 268 Mich. App. at 614 (quotation marks and citation omitted).
Relatedly, defendant argues that defense counsel was ineffective for failing to object to the prosecution's questions concerning defendant's religious statements on the grounds that the questions were intended to inflame the jury. We disagree. "[T]he test for prosecutorial misconduct[3] is *212 whether a defendant was denied a fair and impartial trial." People v. Dobek , 274 Mich. App. 58, 63, 732 N.W.2d 546, (2007). A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." Id . at 63-64, 732 N.W.2d 546. Prosecutorial comments must be read as a whole and evaluated in context and in light of the arguments of the defense. People v. Thomas , 260 Mich. App. 450, 454, 678 N.W.2d 631 (2004).
Here, the prosecution asked MH questions regarding the actions and statements defendant made as he kept MH confined. Most of the statements referring to defendant's religion were relevant and reflected factual descriptions of MH's continued confinement. It does not appear from the record that the prosecution sought to insert religion into the case in order to arouse possible prejudice in the jury, but rather as a factual description of the events. Therefore, an objection by defendant's trial counsel on the grounds of prosecutorial misconduct would have been futile. Counsel was not ineffective for failing to make a futile objection. In re Archer , 277 Mich. App. 71, 84, 744 N.W.2d 1 (2007).
Next, defendant argues that his trial counsel should have objected to the trial court's instructions to the jury after MH demonstrated that she could load ammunition into the magazine of the handgun. The trial court instructed the jury that defense counsel had requested that MH demonstrate outside the presence of the jury her ability to load the handgun's ammunition magazine with eight bullets. The trial court instructed the jury that MH had demonstrated "the physical strength to load the ammunition into the magazine" and that "she was able to put the rounds into the magazine."
*213 During the demonstration, MH initially appeared to struggle to load the magazine and only had success after defense counsel informed her that she had been loading the ammunition backwards. Defendant therefore argues that defense counsel should have objected to the court's instruction and should have and requested that the trial court include a statement that MH had required assistance to load the magazine. We disagree. Defense counsel's theory was that MH lacked the strength to load the magazine of the handgun found in defendant's home despite MH's testimony that defendant made her load the magazine during her confinement. Because defense counsel requested the demonstration expressly for the purpose of *575 demonstrating whether MH had the strength to load the magazine, the trial court's instruction to the jury regarding the demonstration was accurate. Even if MH did require a brief verbal prompt while attempting to load the magazine in front of a trial judge and multiple officers of the court, she demonstrated that she had the strength to load the magazine. And the fact that she required such a prompt was not dispositive of whether she had previously loaded the magazine. Given these circumstances, it is doubtful that an objection to the trial court's instruction regarding the demonstration would have been successful. Trial counsel is not required to make futile objections. Archer , 277 Mich. App. at 84, 744 N.W.2d 1. And even if an objection would have been successful, it is doubtful that the exclusion of this evidence would have resulted in a different outcome. Jordan, 275 Mich. App. at 667. Defendant has thus not demonstrated that he was prejudiced by his counsel's lack of objection.
Defendant also argues that his trial counsel was ineffective for failing to object to testimony characterizing the state of defendant's home. Defendant's mother testified that she had previously observed that *214 defendant's home was "a mess," with dog hair on everything, and a detective described the home on the day of the incident as having "a really bad odor," some broken doors, holes in some walls, and some things painted on a wall. A photograph of two obscene words painted on the master bedroom's wall was admitted.
Defendant argues that this evidence was irrelevant. However, defense counsel had objected previously to the relevance of similar testimony from MH. The trial court had allowed the testimony after the prosecution argued that it was relevant to demonstrate the theory that defendant had been losing control of his emotional state and to show his activities immediately preceding the crimes. Any objection to similar testimony from defendant's mother and the detective likely would have been similarly unsuccessful because the testimony was also relevant to the prosecution's theory that defendant's deteriorating emotional state, as evidenced by the neglect and defacement of his home, contributed to his commission of the charged crimes. Counsel was not ineffective for failing to make a futile objection. Archer , 277 Mich. App. at 84, 744 N.W.2d 1.
IV. SENTENCING
Finally, defendant argues that the trial court erroneously scored OVs 4 and 7. We disagree. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." People v. Calloway, 500 Mich. 180, 184; 895 N.W.2d 165 (2017). (quotation marks and citation omitted). We review for clear error the trial court's factual determinations at sentencing. People v. Hardy , 494 Mich. 430, 438, 835 N.W.2d 340 (2013).
The trial court must *215 consult the advisory sentencing guidelines and assess the highest number of possible points for each offense variable. People v. Lockridge , 498 Mich. 358, 392 n. 28, 870 N.W.2d 502 (2015). The trial court's determinations must be supported by a preponderance of the evidence. People v. Osantowski , 481 Mich. 103, 111, 748 N.W.2d 799 (2008).
Defendant argues that OV 4 was erroneously scored at 10 points because there was no demonstrated serious psychological injury to MH was demonstrated. OV 4 provides for a "[s]core [of] 10 points if the serious psychological injury may require professional treatment," and "the *576 fact that treatment has not been sought is not conclusive." MCL 777.34(2). OV 4 is scored at zero points when "[n]o serious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(b). Defendant argues that the trial court improperly scored OV 4 at 10 points because of the nature of the crime rather than on evidence of serious psychological injury. See People v. Lockett , 295 Mich. App. 165, 183, 814 N.W.2d 295 (2012) ("The trial court may not simply assume that someone in the victim's position would have suffered psychological harm...."). In this case, however, the trial court scored OV 4 at 10 points on the basis of MH's fear that she was going to die, the fact that she wanted to look at pictures of her children as she died, and "all of the things that happened that [the court] heard firsthand from [MH] and observed firsthand in the courtroom[.]" The trial court also concluded that MH's victim impact statement confirmed the psychological injury. The victim impact statement indicated that MH had been seeing a therapist through a domestic violence shelter because she was feeling unlovable and disgusting because of the abuse she had endured. She also mentioned nightmares and flashbacks to the day "he decided to take my life" and a *216 daily struggle with emotional stability as a result of the trauma. At trial, MH testified that she cried for the 3 ½ hours she spent confined in the room at gunpoint, and that she thought she was going to die. Further, a neighbor described MH as shaking and crying after she escaped from defendant, a detective stated that MH was upset to the extent that MH had difficulty communicating, the emergency room physician said that she was upset, and another officer stated that he tried to calm MH down while she was crying. Ample evidence supported the trial court's scoring of OV 4.
OV 7, MCL 777.37, aggravated physical abuse, is scored at 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[4] It is scored at zero points when there was no victim treated in the manner described. The trial court found that defendant had engaged in sadism[5] or conduct designed to cause additional pain, grief, and anxiety. To support the scoring, the trial court referred to defendant's use of the handgun and his continuous threats to rape and kill MH, causing fear and anxiety that exceeded the conduct necessary to commit the crimes. In determining how many points to assess under OV 7, a trial court should "determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such *217 conduct was intended to make the victim's fear or anxiety increase by a considerable amount." Hardy , 494 Mich. at 443, 835 N.W.2d 340. Defendant argues that his conduct was not sufficiently egregious to justify a score of 50 points because MH's conduct demonstrated that she did not find his threats to be credible. While MH initially may not have believed defendant's threats, the record is clear that by the time she made her escape she was convinced that defendant was serious and that her life was at risk. More importantly, OV 7 is scored on the basis of defendant's *577 conduct and his intent, not whether the victim felt sufficiently threatened. See MCL 777.37.
Defendant was convicted of assaulting MH, unlawfully imprisoning her, and misdemeanor domestic violence. A conviction for unlawful imprisonment requires that "(1) a defendant must knowingly restrain a person, and (2) the restrained person must be secretly confined." People v. Railer , 288 Mich. App. 213, 217, 792 N.W.2d 776 (2010) (quotation marks omitted). "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." People v. Chambers , 277 Mich. App. 1, 8, 742 N.W.2d 610 (2007) (quotation marks and citation omitted).
The record contains substantial evidence supporting the conclusion that defendant's prolonged behavior was egregious and sadistic. Defendant's behavior appeared to be designed to keep MH captive emotionally as well as physically and went beyond the elements of his crimes. MH stated that defendant confined her for 3 ½ to four hours, threatened her with guns, and assaulted her with his hands and feet, a liquor bottle, and a handgun. She said that defendant choked and *218 kicked her and then left the room to retrieve his two guns. She stated that defendant told her that she could not leave and that he was going to drink liquor and smoke cigarettes before he killed them both. She reported that defendant threatened to rape her, told her that she should have believed the stories he had told her of bad things he had done to other women, and struck her while she was in the fetal position and not responsive to him. Defendant would not allow MH to stand, pointed the handgun at her head when she resisted, and made her repeatedly load the handgun, telling her that he wanted the bullet that killed him to have her fingerprints. Defendant also forced MH to put the handgun in her mouth. Ample evidence supported the trial court's scoring of OV 7.
Affirmed.
Markey, P.J., and Ronayne Krause, J., concurred with Boonstra, J.

MRE 702 states, "If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise."

Relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403.

We have discussed the difference between "prosecutorial error" and "prosecutorial misconduct." People v. Cooper , 309 Mich. App. 74, 87-88, 867 N.W.2d 452 (2015). Here, defendant's argument that the prosecution deliberately and repeatedly sought to inflame the jury with religious prejudice would appear to be fairly characterized as a claim for prosecutorial misconduct, rather than the "technical or inadvertent" errors that are "more fairly presented as claims of prosecutorial error." Id . ; see also MRPC 8.4. Nonetheless, regardless of "what operative phrase is used," we must look to see whether the prosecution "committed errors during the course of trial that deprived defendant of a fair and impartial trial." Id . (citation omitted).

MCL 777.37, as amended by 2002 PA 137, effective April 22, 2002. MCL 777.37 was amended after defendant's offense by 2015 PA 137, effective January 5, 2016, to add "similarly egregious conduct" to the list of factors meriting points under OV 7.

"Sadism" means conduct that "subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3).