*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GEORGE DARYL MCFARLAND,

        Defendant-Appellant.

UNPUBLISHED
May 9, 2019

No. 343143
Wayne Circuit Court
LC No. 16-010955-01-FC

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree premeditated murder, MCL 750.316(1)(a), a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without the possibility of parole for his first-degree murder conviction, life imprisonment with the possibility of parole for his felon-in-possession conviction, and two years' imprisonment for his felony-firearm conviction. We affirm.

## I. BACKGROUND

This case arises out of the murder of the victim, Anthony Taylor, Jr. (Taylor). Defendant and Marcia Peeples (Peeples) were married in 2011, but their marriage began to fall apart after defendant had an affair in 2013. Peeples informed defendant that she wanted a divorce, and she began seeing Taylor in late summer 2016, though she did not tell defendant that they were dating. Peeples moved out of defendant's house after defendant saw text messages on Peeples's phone between Peeples and Taylor.

On December 2, 2016, at around 11:00 p.m., Peeples and Taylor met at a restaurant in Berkley. They left the restaurant at the same time, though, as they normally did, they stayed on the phone until they both arrived at their respective homes. Peeples heard Taylor arrive at his house on Huntington Street in northwest Detroit, where he lived with his father, Anthony Taylor, Sr. (Taylor Sr.). As Taylor walked up to the house, Peeples heard him say "awe, man" or "awe naw." She called Taylor's name, but only heard a little brushing noise. The next thing that

-1-

Peeples heard was the voice of Taylor Sr. yelling for someone to call 911. Taylor Sr. had heard gunshots outside his house, and he had gone outside to find Taylor dead, lying in the bushes.

At trial, the prosecution produced testimony from one of Taylor's neighbors that a white utility van matching the description of defendant's van had been driving around Taylor's house prior to the murder. Video footage from another neighbor's house also showed the white van driving up and down Huntington Street prior to the murder. Another neighbor had seen the shooter, and provided a description which roughly matched defendant. Explosive residue, which could have been gunshot residue, was found on the handle of the driver's side door of defendant's van and inside the driver's side door. Defendant's computer had been used to look up Taylor's name and address, and websites related to Taylor were bookmarked a total of 17 times on defendant's computer. Defendant's cell phone was examined, and it revealed that defendant had contacted both Peeples and Taylor multiple times in the months prior to the murder to tell them that they needed to break up. His cell phone was also found to be in the area of the crime at the time of the murder. Defendant had put Taylor's name in his phone as "DD MN," which the prosecution contended could stand for "Dead Man."

While the prosecution theorized that the evidence demonstrated a premeditated and deliberate murder, defendant theorized that the evidence was indicative of a man going through a bad break up. The court instructed the jury that it could find defendant guilty of second-degree murder, but, as previously indicated, the jury convicted defendant of first-degree premeditated murder, felon-in-possession, and felony-firearm. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel was ineffective because she failed to argue second-degree murder during closing arguments. We disagree.

A defendant preserves the issue of ineffective assistance of counsel by moving in the trial court either for a new trial or an evidentiary hearing on the issue pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017). Defendant did neither, and therefore this issue is unpreserved on appeal.

"Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Ordinarily, we review trial court's constitutional determinations de novo and the trial court's factual determinations for clear error. *Id*. A factual determination is clearly erroneous if the appellate court is "left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citations omitted). However, if the issue is unpreserved, as is the case here, our "review is limited to errors apparent on the record." *People v Urban*, 321 Mich App 198, 206; 908 NW2d 564 (2017).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Urban*, 321 Mich App at 206-207 (quotation marks and citations omitted). To support a conclusion that a defendant's trial counsel was ineffective, the defendant must demonstrate that "(1) defense counsel's performance was so deficient that it fell below an

objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Putman*, 309 Mich App 240, 247-248; 870 NW2d 593 (2015) (quotation marks and citations omitted); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  In other words, " '[a] defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different.' " *People v Rosa*, 322 Mich App 726, 741; 913 NW2d 392 (2018), quoting *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

A decision to "proceed with an all or nothing defense is a legitimate trial strategy." *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982).  Similarly, when defense counsel's strategy is to obtain an outright acquittal, an instruction or argument on lesser offenses can reasonably be seen as reducing the defendant's chances of acquittal.  *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986).  See also *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008) (noting that counsel may reasonably decline to raise certain issues, which can be consistent with sound trial strategy).  A particular trial strategy does not rise to the level of ineffective assistance of counsel for the sole reason that it does not work.  *People v Carll*, 322 Mich App 690, 702-703; 915 NW2d 387 (2018).

Defendant has not demonstrated that his trial counsel's failure to mention second-degree murder during closing argument was anything other than sound trial strategy.  Defense counsel informed the jury during opening statement that she would be asking for a verdict of acquittal at the end of the prosecution's case-in-chief.  Defense counsel reaffirmed that request at closing argument.  Defendant's decision to argue an "all or nothing" defense and to request that the jury acquit defendant is a legitimate trial strategy.  *Nickson*, 120 Mich App at 687.  Because the jury knew that defendant was seeking a not guilty verdict, arguing that second-degree murder applied could have been seen as an admission of guilt, or it could have reduced the chances that defendant would be acquitted.  *Robinson*, 154 Mich App at 94.  Such an argument would also have been inconsistent with defendant's theory of the case.  Therefore, defendant has not overcome the presumption that his trial counsel's decision was sound trial strategy.

However, even if defense counsel's decision against arguing second-degree murder was not a reasonable trial strategy, defendant has also failed to demonstrate prejudice.  The jury was aware that it could convict defendant of the lesser included offense of second-degree murder because the prosecution argued that the jury could convict defendant of second-degree murder and trial court instructed the jury that it had the option of convicting defendant of that. Defendant has not demonstrated that his counsel's failure to argue second-degree murder was the reason that the jury convicted him of first-degree premeditated murder over second-degree murder.  Since the jury convicted defendant of first-degree murder even when defense counsel argued only for acquittal, it presumably would still have convicted defendant of first-degree murder even if defense counsel had also argued for second-degree murder.  Therefore, defendant has also failed to demonstrate that the outcome of the trial would have been different.

### III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to convict him of first-degree murder, and his conviction was against the great weight of the evidence, because no evidence suggested that defendant planned the murder or thought about killing Taylor. We disagree.

We review de novo a challenge to the sufficiency of the evidence in a jury trial, while viewing the evidence in a light most favorable to the prosecution "to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). All conflicts in the evidence are resolved in favor of the prosecution, and all circumstantial evidence and resulting reasonable inferences drawn therefrom can establish satisfactory proof of the crime. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). When a defendant's intent is at issue, the trier of fact can infer intent from circumstantial evidence, namely the defendant's words or actions, or from the means or the manner employed to commit the offense. *People v Harrison*, 283 Mich App 374, 382; 768 NW2d 98 (2009).

A defendant is guilty of first-degree premeditated murder if he or she commits a "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018), quoting MCL 750.316(1)(a) (quotation marks omitted). In other words, the prosecution must prove that the "defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). "Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *Id*.

Premeditation is thinking about a decision beforehand, while deliberation is measuring and evaluating the major components of a choice. *Oros*, 502 Mich at 240. "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a second look." *Id*. at 242, citing *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003), and *People v Tilley*, 405 Mich 38, 45; 273 NW2d 471 (1979) (quotation marks omitted). "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). The determination of whether a killing was premeditated or deliberate is an issue for the trier of fact, and the necessary state of mind may be inferred by the defendant's conduct in light of the circumstances. *Oros*, 502 Mich at 243-244.

The evidence demonstrates that a reasonable jury could find that defendant killed Taylor with premeditation and deliberation. A white van that matched the description of defendant's vehicle was seen driving around Taylor's house numerous times prior to the murder. Video footage from Huntington Street corroborated that testimony. Defendant's cell phone was also in the area of the crime at the time of the murder. There was also explosive residue on the handle

of the driver's side door of defendant's van. A neighbor provided a description of the shooter which roughly matched defendant's description. Additionally, defendant's computer had been used to look up Taylor's name and address. Websites related to Taylor were bookmarked 17 times on defendant's computer. The contact name for Taylor in defendant's phone was "DD MN," which, as the prosecution asserted during closing arguments, could stand for "Dead Man." Defendant had also called and texted both Peeples and Taylor multiple times in an attempt to force them to stop seeing each other.

That evidence, when viewed in a light most favorable to the prosecution, would allow a jury to conclude that defendant committed first-degree premeditated murder. The jury could reasonably infer that time had passed between when defendant first had a "homicidal thought" and later committed the "ultimate action." *Oros*, 502 Mich at 242. Defendant could have labeled Taylor a "dead man" in his phone, and he had researched Taylor's address, therefore, defendant could have wanted to kill Taylor weeks or months prior to Taylor's murder. The jury could also have reasonably inferred that defendant decided and intended to murder Taylor on December 2, 2016, and subsequently, waited for Taylor to arrive home in order to kill him. A white van was seen driving around Taylor's house on Huntington Street at least an hour before Taylor arrived home, thus, defendant could have been patrolling Taylor's house and waiting for Taylor to arrive before killing him. Additionally, while defendant had not directly threatened Taylor, he had intervened in Taylor and Peeples's relationship. The jury could infer that defendant wanted to remove Taylor from Peeples's life. The evidence of the parties' prior relationship, defendant's actions before the killing, and the circumstances of the murder itself is sufficient evidence of premeditation. *Schollaert*, 194 Mich App at 170. While that evidence is not direct evidence of defendant's intent, it is circumstantial evidence from which the jury could reasonably infer premeditation. *Harrison*, 283 Mich App at 382. The jury could also have concluded that defendant killed Taylor because there was explosive residue, which could have been gunshot residue, on the door handle of defendant's van, defendant's cell phone was present in the area at the time of the crime, and the description of the murderer roughly matched defendant. Defendant also stated during his interview that he knew that Taylor had been killed because Lachelle told him so; however, Lachelle testified that she did not say that to defendant. That discrepancy would also have allowed the jury to conclude that defendant killed Taylor because he should not have known about the murder at the time of his interview. Therefore, there was sufficient evidence to conclude that "defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *Ortiz*, 249 Mich App at 301.

Alternatively, defendant contends that his conviction of first-degree murder was against the great weight of the evidence, but that contention lacks merit. A challenge to the great weight of the evidence is generally reviewed to determine whether the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011) (quotation marks and citations omitted). However, defendant failed to preserve his great-weight claim by moving for a new trial before the trial court, thus, that challenge is unpreserved and reviewed for plain error. *Id*. at 617-618. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is warranted when the plain error leads

to "the conviction of an actually innocent defendant[,]" or where the error affects the "fairness, integrity, or public reputation" of the proceeding. *Id*. at 763-764 (quotation marks and citation omitted).

A verdict is against the great weight of the evidence "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Resolution of credibility questions is "within the exclusive province of the jury." *Id*. at 470. A new trial is only appropriate if the witness testimony contradicts "indisputable physical facts or laws," is "patently incredible" or defies physical realities, is "so inherently implausible that it could not be believed by a reasonable juror," or was "seriously impeached in a case that was marked by uncertainties and discrepancies." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015) (quotation marks and citations omitted).

In this case, the verdict was reasonably supported by the evidence. Defendant merely contended that the evidence presented was indicative of a man going through a bad breakup, rather than a man planning to kill Taylor. The fact that the jury found the prosecution's arguments credible and the prosecution's witnesses to be credible, but disagreed with defendant's arguments, does not mean that the verdict "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Cameron*, 291 Mich App at 617 (quotation marks and citations omitted).

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan