*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 9, 2019

Plaintiff-Appellee,

v

No. 341616
Ingham Circuit Court

BRAD COURNAYA,

LC No. 17-000243-FH

Defendant-Appellant.

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of enticing a minor for commercial sexual activity, MCL 750.462e(a), and using a computer to commit a crime, MCL 752.796. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve concurrent sentences of 200 to 480 months in prison for his convictions. Defendant appeals as of right, and we affirm.

## I. FACTS

On January 6, 2017, the 15-year-old complainant was sleeping over at her best friend's home. Defendant is the stepfather of the complainant's best friend. On the evening in question, the family gathered with the complainant to watch television. Defendant's wife and children were asleep in the living room when defendant showed the complainant a message on his cellular telephone asking her whether she wished to earn $50, and, after she said no, $75, which she also rejected. The complainant believed that defendant's offer was intended as compensation for a sexual act because he had earlier shown her an image of his penis on his cellular telephone, as well as a video of what was apparently sexual activity, which she had glanced at. The complainant disclosed the incident a couple weeks later.

## II. ANALYSIS

### A. OTHER ACTS EVIDENCE

On appeal, defendant first argues that the trial court erred by admitting five images of the complainant, found on defendant's cellular telephone, pursuant to MRE 404(b). Two of the images were from a slumber party at the complainant's home when she was 13 years old. She did not provide them to defendant. The three others were taken by defendant's wife in October 2016 and depicted the complainant and defendant's step-daughter in their homecoming dresses. The trial court allowed the images but prohibited the prosecutor from mentioning that some of the pictures had been edited to feature the complainant only.

Whether other acts evidence was properly admitted is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). An evidentiary error does not merit reversal in a criminal case unless, "'after an examination of the entire cause,'" it affirmatively appears "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Our Supreme Court has cautioned that the general rule underlying MRE 404(b) "is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). Generally, to be admissible under MRE 404(b), other acts evidence must be (1) offered for a purpose other than to establish a "character or propensity theory[,]" (2) relevant, and (3) its probative value cannot be substantially outweighed by its potential for unfair prejudice in accordance with MRE 403. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Additionally, rather than simply accepting the prosecution's stated reason for offering the evidence, a trial court must closely analyze the proffered evidence to discern whether it is logically relevant. *Denson*, 500 Mich at 316.

Here, the prosecution introduced the challenged evidence to illustrate to the jury that defendant's actions involving the complainant giving rise to this appeal were motivated by his attraction to the complainant and his intent to target the complainant in a sexual way. Defendant asserts that the images do not reveal such a motive because they are not sexually suggestive. As the Court observed in *Denson*, a key inquiry to be made in determining if the evidence was offered for a proper purpose is whether the evidence is relevant. *Id.* at 316. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition," evidence that is relevant to any "material

point" at trial is admissible. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). The images stored on defendant's cellular telephone were relevant to whether defendant had a sexual interest in the complainant that motivated his interactions with her on the night of January 6, 2017. Put another way, the images were relevant not only to defendant's motive in showing the complainant sexual images on his cellular telephone and subsequently offering her money to perform a sexual act on him, but also to his intent while performing such actions. We therefore agree with the trial court's determination that the challenged evidence was introduced for a proper purpose and that it was relevant.

Defendant also argues, however, that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Relevant evidence may be excluded pursuant to MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012), quoting MRE 403. Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "the jury's bias, sympathy, anger, or shock." *McGhee*, 268 Mich App at 614 (citation and quotation marks omitted).

Defendant argues that the evidence was unfairly prejudicial because it showed images of the complainant in defendant's cellular telephone and the prosecution argued that it showed that defendant was obsessed with her. While defendant characterizes the evidence as inflammatory, the images were ordinary images of the complainant posing playfully with friends or in her homecoming dress. They were not shocking and we are not persuaded that they would provoke bias, sympathy, or anger from the jury. Additionally, that they were on defendant's cellular telephone was probative of and relevant to defendant's sexual interest in the complainant. While defendant asserts that his convictions resulted from the jury viewing the images, we note that the complainant testified at trial that defendant showed her sexual images on his cellular telephone and a message on his cellular telephone implying that he would pay her money in exchange for a sexual act. Defendant's wife also testified that defendant subsequently acknowledged offering money to the complainant and that his actions were wrong. Thus, in our view, it is highly unlikely that the jury's viewing of the earlier photographs of the complainant motivated it to convict defendant. The trial court did not abuse its discretion by admitting the images.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence at trial was insufficient to support his convictions because there was no evidence that he was offering money to the complainant for a sexual activity. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). When weighing whether the defendant's convictions were supported by sufficient evidence, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (citation and quotation marks omitted). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from the

evidence, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

MCL 750.462e(a) makes it unlawful to "[r]ecruit, entice, harbor, transport, provide, or obtain by any means a minor for commercial sexual activity." MCL 752.796(1) provides that "[a] person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime." On appeal, the thrust of defendant's argument is that the record evidence did not support a conclusion that defendant attempted to entice the complainant for sexual activity.

The complainant testified that while she was spending the night at her best friend's home, which was a common occurrence, they were watching television with defendant's wife and family, and both defendant and the complainant were on the couch. The complainant recalled that defendant showed her an image on his cellular telephone of a penis, which she described as erect and tattooed with dark, faded ink. The police found twelve images of a penis on defendant's cellular phone, and defendant and his wife identified it at trial as defendant's penis. The complainant stated that less than a minute later, defendant displayed another image on his cellular telephone that she thought was a video of sexual activity because of the movement and noise. She resisted looking and only glanced at the phone briefly before asking defendant to stop. He left the room. Defendant returned to the room about 30 minutes later, while the others in the room, which was lit only by the television, were asleep, and asked the complainant to read a message on his phone, which stated, "Do you want to make $50?" The complainant responded by saying, "No;" but she thought that defendant was asking about something sexual in nature based on his actions throughout the day and her knowledge of prostitution from a television show. Defendant then showed her another message that said, "$75." She again responded by saying, "No." Defendant acknowledged typing the messages and showing them to the complainant. We agree with the prosecution that this evidence, and the reasonable inferences arising from it, demonstrated beyond a reasonable doubt that defendant used his cellular telephone to entice "a minor for commercial sexual activity." MCL 750.462e(a).

Defendant specifically argues that there was no evidence that his offer of money was for sexual activity. He claimed the reference to money was related to the purchase of a dress for an upcoming formal dance. Defendant testified that his wife had informed him that they were going dress shopping the following day with his stepdaughter and the complainant and he remarked that he would pay for both dresses because his wife told him that the complainant was not sure she could afford a dress. Defendant's wife confirmed that she and defendant had decided a week before January 6, 2017 to surprise the complainant by getting her a dress because her mother could not afford a dress. However, defendant's wife disclosed this information only after multiple statements to police and her testimony at the preliminary examination. Defendant had given money to the complainant on previous occasions, including when she moved garden rocks for defendant's mother. Defendant explained that he expected the complainant to respond that she wanted the money, and that he would ask for her to help move garden rocks again for his mother. Defendant did purchase a dress for the complainant the day after he sexually propositioned her. While the testimony from the complainant and defendant was contradictory, the jury was free to evaluate all of the evidence and make determinations about what evidence was credible. It is the role of the jury to determine "the weight and credibility of witnesses [and] the evidence," *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013), and this

Court will not interfere with the trier of fact's role in this regard. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant notes correctly that his messages to the complainant did not expressly state that the money he offered was for a sexual activity. However, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Id*. at 622. Here, there was evidence to support a reasonable inference that defendant offered the money to the complainant for sexual activity. Defendant began referring to himself as "big daddy" to the complainant earlier that same day, making the complainant uncomfortable. Defendant's cellular telephone contained five images of the complainant that defendant did not take himself with his cellular telephone, raising a reasonable inference that defendant was interested in the complainant's appearance. Defendant's display of sexual images to the complainant while they were watching television in the presence of his wife and children, immediately before he offered her money, gives rise to a strong implication that defendant was suggesting something sexual when he offered her money. Defendant subsequently approached the complainant with the messages while wearing only shorts and no shirt, and while the remainder of the family was sleeping. Moreover, during her testimony at trial, defendant's wife recalled that when she confronted defendant about what happened with the complainant, defendant, after he initially stated that he could not "mess or joke" around with a 15-year-old, subsequently "totally admitted it[.]" Because defendant (1) waited until the others were sleeping, (2) did not verbalize his offer, and (3) did not include his stepdaughter, who was also in need of a dress, in the interaction, it is a reasonable inference that defendant did not wish for others to be involved in his offer to the complainant because it involved a sexual act. Defendant's wife also testified that she threw away a letter that defendant had sent her from jail stating that he was sorry and he did not know why he did what he did. In reviewing the sufficiency of the evidence, this Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003) (quotation marks and citations omitted). The record evidence amply supports the jury's verdict that defendant enticed the complainant to engage in sexual activity.

## C. SENTENCING

Defendant next argues that his sentence of 200 months (16 years and 8 months) to 40 years was disproportionate and cruel and unusual.

However, under circumstances where the trial court imposes a sentence within the applicable guidelines range, this Court must affirm the sentence unless defendant alleges an error in the scoring of the guidelines or that the trial court relied on inaccurate information in fashioning the sentence. *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018); *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016); MCL 769.34(10). Defendant's minimum sentence guideline range was 72 to 240 months. Thus, defendant's minimum sentence was within the guideline range. A sentence within the guideline range is presumed proportionate. *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), lv pending. Additionally, a sentence that is proportionate will not amount to cruel or unusual punishment. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). Thus, defendant's arguments that his sentence is disproportionate and cruel and unusual punishment are unpersuasive.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises allegations of ineffective assistance of counsel in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

Defendant did not preserve this issue by bringing a motion for a new trial or requesting a *Ginther* hearing.[1]  See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009) (observing that a claim alleging ineffective assistance of counsel was preserved because the defendant moved for a new trial or a *Ginther* hearing in the trial court).  Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).  The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo.  *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions.  US Const, Am VI; Const 1963 art 1, § 20.  To substantiate an ineffective assistance of counsel claim, a defendant must show "'that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.'"  *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007), quoting *People v Riley* (*After Remand*), 468 Mich 135, 139; 659 NW2d 611 (2003).  Trial counsel's performance is deficient if "it fell below an objective standard of professional reasonableness[.]"  *People v Jordan,* 275 Mich App 659, 667; 739 NW2d 706 (2007).  Trial counsel's deficient performance will be deemed to have prejudiced the defense if it "is reasonably probable that, but for counsel's error, the result of the proceeding would have been different."  *Id.*  The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise."  *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).  This Court also presumes that trial counsel's decisions resulted from "sound trial strategy," and will not second-guess trial counsel's decisions at trial with the benefit of hindsight.  *People v Urban*, 321 Mich App 198, 207; 908 NW2d 564 (2017), lv pending.

Defendant first argues that his trial counsel should have obtained an expert to analyze the contents of his cellular phone.  According to defendant, an expert could have countered the prosecution's expert who testified that images of defendant's penis were accessible on his cellular telephone.  Defendant testified that he had deleted the images, and claims that an expert could have testified that the photos were not accessible for defendant to display to complainant.

The record does not yield any indication that trial counsel's decision not to present a defense expert with regard to defendant's cellular telephone resulted from anything but trial strategy.  Notably, the record does not indicate that trial counsel's strategic choices were made after less than a complete investigation, or that trial counsel's decisions followed a failure to exercise "reasonable professional judgment."  *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).  Further, in many instances it is not necessary to retain an expert witness to

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

counter the opposite party's expert because cross-examination may suffice to undermine the testimony. *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011).[2]

On cross-examination, during questioning by trial counsel, Michigan State Trooper Cody Zontz acknowledged that he did not know for certain whether, if defendant's cellular telephone were turned on at trial, one could access the photographs that were found during the extraction process Trooper Zontz performed on defendant's cellular telephone. Trial counsel continued to pointedly question Trooper Zontz regarding whether photographs could potentially exist on defendant's cellular telephone that were yielded by the extraction process, but that the user of the telephone may not be able to access, and Trooper Zontz answered in the affirmative. However, when trial counsel inquired "you don't know whether the photos that you were shown [during direct examination] were accessible by the user[,]" Zontz answered, "I do." Trial counsel continued to establish, during additional questioning of Trooper Zontz, that timeline data from defendant's cellular telephone did not show that defendant had accessed images of his penis on January 6, 2017, the day he was alleged to have sexually propositioned the complainant. Our review of the record confirms that trial counsel undertook concerted efforts to use cross-examination to undermine the potentially damaging aspect of the photographs that were found during the extraction process on defendant's cellular telephone. As the prosecution points out on appeal, it is very likely that trial counsel surmised that calling an expert witness may not work to defendant's advantage, given that closer scrutiny of the images that defendant retained on his cellular telephone could have exposed defendant's possession of other "highly prejudicial" photographs that were not introduced at trial. While trial counsel's strategy may not have been successful, on this record defendant has not overcome the presumption that trial counsel's performance was the result of sound trial strategy.

Defendant also argues his trial counsel should have moved to disqualify the trial court based on statements made during a hearing on defendant's motion to quash his bindover and to amend his bond. Specifically, the trial court recalled a previous case in which defendant appeared before the trial court. The trial court was generally discussing its consideration of defendant's previous criminal record as it pertained to his bond. Significantly, the trial court stated twice that it was not considering the earlier proceeding where defendant appeared before it in determining the status of defendant's bond.

Disqualification of the trial court "is appropriate when a judge cannot impartially hear a case, including when the judge is personally biased or prejudiced for or against a party or attorney." MCR 2.003(C)(1)(a); *People v Coones*, 216 Mich App 721, 726; 550 NW2d 600 (1996) (opinion by BANDSTRA, J.). To disqualify the trial court, actual prejudice must be demonstrated unless the "trial judge or decisionmaker might have prejudged the case because of a prior participation as an accuser, investigator, factfinder, or initial decisionmaker." *Id*. at 726

---

[2] In *Harrington*, the United States Supreme Court also stated that "[*Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)] does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 US at 111.

(opinion by BANDSTRA, J.). Here, there is nothing in the record to reflect that the trial court was biased against defendant, and the trial court expressly stated that it would not consider the prior case during the lower court proceedings. Indeed, rather than expressing any bias against defendant, the trial court actually spoke of its attempt to assist defendant in the prior case. Therefore, a motion to disqualify the trial court on these grounds would not have been successful. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

Finally, defendant briefly mentions that his trial counsel could have attempted to avoid the trial court by moving to change venue. Venue is generally proper "in the county where the crime was committed." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). If there are "special circumstances where justice demands or statute provides," a trial court may move venue to another county. *Unger*, 278 Mich App at 254. Given that there was no basis for a challenge to venue in this case, there is no indication that trial counsel's performance was objectively unreasonable, given that trial counsel is not required to raise an argument that is without merit. *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood