# Order

Michigan Supreme Court
Lansing, Michigan

July 31, 2019

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

156458

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

JAMES DAVID URBAN,
      Defendant-Appellant.

SC: 156458
COA: 332734
Eaton CC: 15-020176-FH

_____/

On March 6, 2019, the Court heard oral argument on the application for leave to appeal the August 31, 2017 judgment of the Court of Appeals. On order of the Court, the application is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE that part of the Court of Appeals opinion holding that the language used in the laboratory report that " 'it can be concluded to a reasonable degree of scientific certainty that the DNA profile . . . is from the same individual,' " met the requirement from *People v Coy*, 243 Mich App 283, 301 (2000), of "some analytic or interpretive evidence concerning the likelihood or significance of a DNA profile match . . . ." The *Coy* standard requires that when DNA evidence is introduced, it must be accompanied by some qualitative or quantitative interpretation.[1] *Id.* at 302. The descriptive phrase, "to a reasonable degree of scientific certainty" offers neither. The phrase is a legally created term of art that is unused by scientists outside of courtrooms. Kaye, *The Double Helix and the Law of Evidence* (Cambridge: Harvard University Press, 2010), p 82. Because the phrase is meaningless and potentially misleading, the United States Attorney General has directed United States Department of Justice forensic laboratories to ensure that it is not used in reports or testimony. United States Department of Justice, Memorandum for Heads of Department Components, *Recommendations of the National Commission on Forensic Science; Announcement for NCFS Meeting Eleven* (September 6, 2016), available at <https://www.justice.gov/opa/file/891366/download> (accessed July 18, 2019) [https://perma.cc/9JLK-ZGH9]; see also National Commission on Forensic Science, *Views on the Commission—Use of the Term "Reasonable Scientific Certainty"* (March 22, 2016), available at <https://www.justice.gov/archives/ncfs/file/839726/download> (accessed July 18, 2019) [https://perma.cc/GK4P-K7J9] (encouraging the Attorney General to abandon the phrase because it has "no place in the judicial process" for many

---

[1] Because neither party argues *Coy* should be overruled, we do not address whether it is the appropriate standard and simply apply it here.

reasons, including that it lacks scientific meaning, is misleading, and is without any real-world significance to the scientific fields represented by expert testimony).

We nonetheless AFFIRM the result reached by the Court of Appeals on this issue because we agree with its conclusion in the alternative that admission of the DNA evidence did not affect the defendant's substantial rights and therefore does not require reversal. The forensic expert performed a quantitative analysis to generate the report she presented as evidence. That analysis revealed that the blood that matched the victim's DNA did so within a frequency of no fewer than 1 in 53.85 octillion ($53.85 \times 10^{27}$) and the defendant's matched within a frequency of no fewer than 1 in 18.62 nonillion people ($18.62 \times 10^{30}$). The defendant did not object to the admission of the report summarizing that the match was "to a reasonable degree of scientific certainty," and one reason may have been because that description was less harmful than one showing these quantitative probabilities. But even had he objected to the lack of a supporting foundation for the DNA evidence as required by *Coy*, the defendant could not show he was prejudiced. The purpose of the DNA evidence was to confirm that the defendant and the victim were at the scene of the altercation and that both shed blood. The defendant's theory of the case admitted as much; during closing arguments, the defense described the altercation as a "brawl" with the victim. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court.

MARKMAN, J. (*concurring*).

While I would also affirm the result reached by the Court of Appeals, I would not do so on the basis of the harmlessness of the error asserted by the majority; rather, in my judgment, no error occurred at all. In particular, I do not believe that the report of the prosecutor's expert that the DNA match here was supported to a "reasonable degree of scientific certainty" breached *People v Coy*, 243 Mich App 283, 302 (2000), given that the genetic analysis in this case revealed that the blood that matched the victim's DNA did so within a frequency of no fewer than 1 in 53.85 octillion people and the blood that matched defendant's DNA did so within a frequency of no fewer than 1 in 18.62 nonillion people. As concluded by the Court of Appeals, the expert's articulation fully satisfied the requirement of *Coy* that either a "qualitative or quantitative" interpretation of the evidence be provided. *People v Urban*, 321 Mich App 198, 203-205 (2017). Identifying the evidence in this case as possessing a "reasonable degree of scientific certainty" constitutes a fully compliant description as it pertains exactly to the "quality or kind" of the DNA match. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "qualitative" as "of, relating to, or involving quality or kind"). Moreover, as recognized by Maryland's highest court: "When the random match probability is sufficiently minuscule, the DNA profile may be deemed unique. In such circumstances, testimony of a match is admissible without accompanying contextual statistics . . . [, and] the expert may testify that in the absence of identical twins, it can be concluded to a

*reasonable scientific certainty* that the evidence sample and the defendant sample came from the same person." *Young v State*, 388 Md 99, 119-120 (2005) (emphasis added).

ZAHRA, J., joins the statement of MARKMAN, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 31, 2019



Clerk

s0730